# IN THE UNITED STATES BANKRUPTCY
# COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE | : CHAPTER 13 |
| | : |
| STEPHEN DEITCH | : |
| | : |
| DEBTOR(S) | : BANKRUPTCY NO. 13-10121 |

---

# OPINION

BY: STEPHEN RASLAVICH, UNITED STATES BANKRUPTCY JUDGE.

*Introduction*

The Debtor has objected to the Proof of Claim of Federal National Mortgage

Association (Fannie Mae). The Objection is opposed. A hearing on the matter was held

on September 17, 2014. After the conclusion of the hearing and the submission of post-

trial briefs, the Court took the matter under advisement. For the reasons which follow,

the Objection will be denied.[1]

*Proof of Claim*
*And Objection*

Fannie Mae's Proof of Claim is based on a consumer loan secured by a

mortgage. The Debtor has objected to it claiming that he made a valid request to

rescind the loan which Fannie Mae refused.

*Procedural Background*

On August 11, 2013, the Debtor filed an Objection to Fannie Mae's Proof of

Claim.

---

[1] Because this matter involves an objection to a claim, it is within this Court's "core" jurisdiction. *See* 28 U.S.C. § 157(b)(2)(B)

On October 8, 2013, Fannie Mae filed a response. The Response disputed the

allegation that the Debtor had the right to rescind the loan. *See* Response. On

December 4, 2013, the Court held a hearing on the Objection. During oral argument the

Debtor requested leave to submit a post-hearing brief. The Court granted leave to both

parties.  After receipt of the briefs, the Court denied the Objection, but did so based on a

new argument made by Fannie Mae in its post-hearing brief. Judgment having been

entered against it based on an argument to which it was unable to respond, the Debtor

asserted prejudice and moved for reconsideration. On July 23, 2014, the Court granted

that request and vacated the order denying the Objection.

On September 17, 2014, the Court heard the merits of the Debtor's Objection. At

the hearing, the evidence offered consisted of testimony from the Debtor and his wife

and a Stipulation of Agreed Facts. During closing argument, the Debtor again requested

leave to brief an issue not previously raised by either party. The parties were given two

weeks to submit post-trial briefs on that question.

On October 8, 2014, the parties submitted their post-trial briefs. The Debtor once

again requested leave to brief what it considered to be yet another newly-raised issue in

Fannie Mae's brief. The request was unopposed and the Court allowed the parties

leave to file another set of briefs. Upon receipt of those submissions, and with the

record finally closed, the Court took the Objection under advisement.

*Arguments*

The Court has recounted the foregoing procedural history because a clear

picture of each party's position emerged only over time. In the Debtor's case, his

arguments have evolved as the matter progressed. He originally made two points: first,

2

that he may rescind this loan because he was never given notice of his right to cancel the loan as required by applicable state law; and second, that Fannie Mae lacked standing. The standing challenge appears to have been abandoned because the parties have stipulated that Fannie Mae is the assignee and present holder of the note and mortgage. *See* Stipulation of Facts (Stip.), ¶ 5. At the September 2014 hearing, the Debtor maintained that the original lender was also required to give the borrower *oral* notice of the right to cancel *in addition to written* notice.[2]

Fannie Mae's arguments  likewise developed over time. It has always argued that the Debtor's Objection was precluded by res judicata. What has changed about that argument is the factual premise. Originally, it was argued that the issues raised in the Objection had already been adjudicated in the federal District Court. Fannie Mae now asserts that the Objection is precluded by a state court foreclosure judgment.

The same can be said for its substantive challenges. Fannie Mae first argued— and it continues to argue—that the Debtor was given the requisite notice of his right to cancel the loan. After the September 2014 evidentiary hearing, Fannie Mae added two points: first, it disputes that the law on which the Debtor relies is applicable; and second, that even if it were, Fannie Mae is not liable for any violation of that law because it purchased the loan in good faith.

*Issues*

After analyzing the pleadings and the arguments, the Court identifies the following four issues for determination:

---

[2] The question of oral notice would not be expressly raised in any of the Debtor's pleadings or briefs until the Debtor's October 8, 2014 Brief, at 2. To the extent that the point was raised before then, it appeared only in the Debtor's demand letter to Fannie Mae. *See* Stip. ¶, Ex. O.

1.  Is the basis of the Debtor's Objection precluded by res judicata?

2.  Is the Debtor's mortgage loan the type of transaction governed by the Pennsylvania Door to Door Sales Law, 73 P.S. § 201-7?

3.  If it is, then was Debtor given the requisite notice of the right to rescind as required by that law?

4.  If the original lender violated the Door to Door Sales Law, does Fannie Mae enjoy the protection accorded a good faith assignee?

*Burden of Proof*

The initial burden of proof is on Fannie Mae to establish facts to support its claim. If that burden is met, the claim is entitled to prima facie validity. *See* 11 U.S.C. § 502(a); B.R. 3001(f). The burden then shifts to the Debtor as the objector. The Debtor must produce evidence to negate the prima facie validity of the claim. If the Debtor produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts to the creditor to prove the validity of the claim by a preponderance of the evidence. *See In re Allegheny Intern., Inc.*, 954 F.2d 167, 173 (3d Cir.1992).

*Facts*

The parties' Stipulation of Facts establishes the following: On April 25, 2007 the Debtor obtained a mortgage loan from MAS Associates, LLC. *See* Stip., ¶¶ 1, 2. On the same date,[3] the lender gave the Debtor two copies of a Notice of Right to Cancel as well as a Truth in Lending Disclosure Statement. *Id.* ¶ 7, Ex. E. The Debtor and his wife signed that notice. *Id.* ¶ 8. The loan was subsequently assigned to Greenpoint Mortgage Funding which, in turn, assigned the loan to Fannie Mae. *Id., ¶¶* 4,5. Fannie Mae is the present holder of the note and mortgage.

---

[3] The date of the notice as recited in the Stipulation appears to be in error. While the Stipulation says that the notice was given on *August* 25, 2007, the Notice itself says *April* 25, 2007 which is the date that the loan was made. *See* Stip., ¶ 7, Ex. E.

On March 31, 2011 Fannie Mae filed a Complaint in Mortgage Foreclosure. *Id.* ¶ 9. On August 27, 2012 judgment in foreclosure was entered against the Debtor in state court. *Id.* ¶ 16. On January 7, 2013, the Debtor filed this bankruptcy proceeding. On January 17, 2013 the Debtor notified Fannie Mae of its intention to rescind the loan pursuant to a Pennsylvania consumer protection law.[4] *Id.* ¶ 17. On April 28, 2013 that request was rejected. *Id.* ¶ 18. On June 20, 2013, Fannie Mae filed a Proof of Claim in the amount of $226,330.52.

*Res Judicata*

FNMA's first argument raises a point of procedure. Fannie Mae argues that the Debtor's Objection is barred by res judicata. *See* FNMA's Brief, 2-3. The doctrine of res judicata, or claim preclusion, is intended to avoid piecemeal litigation of claims arising from the same events. *Churchill v. Star Enters.*, 183 F.3d 184, 194 (3d Cir.1999). "[A] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Id. quoting Rivet v. Regions Bank of La.*, 522 U.S. 470, 476, 118 S.Ct. 921, 139 L.Ed.2d 912 (1998) (emphasis added).

Fannie Mae's res judicata defense is based on prior litigation between the parties. *See* FNMA's Brief, 2. That litigation was filed and concluded in the Court of Common Pleas for Philadelphia County. It is stipulated that FNMA obtained a judgment in foreclosure against the Debtor. Pursuant to the Full Faith and Credit Act, 28 U.S.C § 1738, a federal court must give a prior state court judgment the same res judicata effect as would be provided by the courts of that state. *Migra v Warren City School District*,

---

[4] The Uniform Trade Practices and Consumer Protection Law, 73 P.S. § 201-1 *et seq.*

465 U.S 75, 81, 104 S.Ct. 892, 896 (1984); *Walker v.Horn,* 385 F.3d 321, 337 (3d. Cir. 2004) That means that the Court must apply the state law definition of res judicata. In Pennsylvania the elements of res judicata are (1) identity in the thing sue upon or for; (2) identity of the cause of action; (3) identity of the persons and the parties to the action; and (4) identity of the quality or capacity of the parties suing or sued. *Patel v. Workmen's Compensation Appeal Board (Sauquoit Fibers Co.)*, 88 Pa. Cmwlth. 76, 79, 488 A.2d 1177, 1179 (Pa.Cmwlth.1985)

Passing to the second element, the Court notes that the two causes of action are not the same. The nature of the prior state court proceeding was mortgage foreclosure. In Pennsylvania, the scope of a foreclosure action is limited. *Randall v. Bank One, N.A.* (*In re Randall),* 358 B.R. 145, 156–157 (Bkrtcy.E.D.Pa. 2006). The applicable rules of procedure set forth what must be pleaded in a foreclosure case. *Id.* citing Pa.R.Civ.P. 1147. Counterclaims in foreclosure actions are limited to claims which "arise[ ] from the same transaction or occurrence or series of transactions or occurrences from which the plaintiff's cause of action arose." Pa.R.Civ.P. 1148. Based on these specific rules of procedure, Pennsylvania courts have ruled that a defendant may not raise federal consumer law claims as counterclaims in a mortgage foreclosure action. *New York Guardian Mortgage Corp. v. Dietzel,* 362 Pa.Super. 426, 431, 524 A.2d 951, 953 (1987); *Fleet Real Estate Funding Corp. v. Smith,* 366 Pa.Super. 116, 126–127, 530 A.2d 919, 925 (1987). In *New York Guardian* the Court explained that the interjection of a TILA counterclaim was incompatible with the foreclosure proceeding because the TILA claim was *in personam* in nature, whereas the foreclosure action was strictly *in rem*. 362 Pa.Super. at 430–31, 524 A.2d at 953. Indeed, on more than one occasion

6

this Court has followed the holding of *New York Guardian*. *See In re Apaydin*, 201 B.R. 716, 721 (Bkrtcy.E.D.Pa.1996) (holding that TILA claims not raised in response to foreclosure may be raised in subsequent litigation); *see also In re Faust*, 353 B.R. 94, 103 (Bkrtcy.E.D.Pa.2006) (same); *In re Blythe*, 445 B.R. 405, 413 (Bkrtcy.E.D.Pa. 2009).  Other courts within this District have held likewise. *See Randall, supra*, 358 B.R. at 166; *In re Reagoso*, 2007 WL 1655376, at *4 (Bkrtcy.E.D.Pa. June 6, 2007)

The same result obtains here. A consumer protection claim based on state law, just as one based on federal law, is an *in personam* proceeding. It could not have been brought in response to a foreclosure action, an *in rem* proceeding. Thus, the outcome of the foreclosure action has no preclusive effect on the Debtor's claim Objection.

*The Loan Transaction and*
*The Door to Door Sales Law*

The Objection also argues that the Proof of Claim should be disallowed because Fannie Mae wrongly denied the Debtor's request to rescind the loan. The right to rescind, says the Debtor, is provided for under a Pennsylvania consumer protection statute. Specifically, the statute grants a consumer a limited right to rescind a transaction which occurred as a result of a visit or call at the consumer's residence:

> Where goods or services having a sale price of twenty-five dollars ($25) or more are sold or contracted to be sold to a buyer, as a result of, or in connection with, a contact with or call on the buyer or resident at his residence either in person or by telephone, that consumer may avoid the contract or sale by notifying, in writing, the seller within three full business days following the day on which the contract or sale was made and by returning or holding available for return to the seller, in its original condition, any merchandise received under the contract or sale. Such notice of rescission shall be effective upon depositing the same in the United States mail or upon other service which gives the seller notice of rescission.

7

73 P.S. § 201-7(a) (hereinafter the "Door to Door Sales Law"). The Debtor asserts that

the loan which is the basis of Fannie Mae's claim originated from a call or visit upon the

Debtor at his home and is therefore covered by the statute. S*ee Christopher v. First*

*Mutual Corp.*, 2008 WL 1815300, at *9 (E.D.Pa., April 22, 2008) (holding that the

"refinancing of mortgage loans constitutes a 'service' under the UTPCPL"). During the

loan transaction, alleges the Debtor, the lender failed to inform him of his right to rescind

the loan as required under the Door-to-Door Sales Law. Because of that failure the

Debtor maintains that he is entitled to rescind the loan, even at this far removed date.

*See, generally*, Objection and Briefs.

Fannie Mae disputes the applicability of the Door to Door Sales Law. It argues

that the statute applies only to those transactions which begin and consummate at the

borrower's residence. FNMA Post-Trial Brief 4. It maintains that because the Debtor has

offered no evidence that the initial contact between the parties occurred on the same

day that the loan closed, the transaction is not of the type covered by the Door to Door

Sales law. *Id.*

Case law interpreting this issue does not construe it as narrowly as Fannie Mae.

The Door to Door Sales Law is "primarily directed to providing protection to a consumer

who falls prey to a seller who contacts the consumer at his or her home and

consummates a sales transaction before the customer has adequate time to reflect on

the wisdom of the purchase." *Johnson v. Metlife Bank, N.A.*, 883 F.Supp.2d 542, 551

(E.D.Pa. 2012) quoting *Burke v. Yingling,* 446 Pa.Super. 16, 21-22, 666 A.2d 288, 291

(Pa.Super. 1995). There is no requirement that the entire transaction conclude at the

consumer's home in a single visit or call. Indeed, some transactions—such as mortgage

loans and refinancings—typically require things that cannot be accomplished in a single

visit. What is required is contact upon the borrower at his/her home which is more than

just incidental to the transaction. *See, e.g., Tellado v. Indymac Mortg. Servs.*, 2011 WL

3495990, at *4 (E.D.Pa. Aug. 8, 2011) *rev'd on other grounds* 707 F.3d 275 (3d Cir.

2013) (holding mortgage loan refinancing services were contracted as a result of

contacts between borrower and lender at borrower's residence where borrower called

lender from his home and the loan closing occurred at borrower's home); *see also WMC*

*Mortg. LLC v. Baker*, 2012 WL 628003, at *19 (E.D.Pa. Feb. 28, 2012) (holding that

because the mortgage loan closing occurred at the borrower's home, the transaction

was entered into "as a result of, or in connection with," in-person contact between

lender (through the broker) and the borrowers, for purposes of the UTPCPL's door-to-

door sales provision); *cf*; *Saler v. Hurvitz* (*In re Saler)*, 84 B.R. 45, 49 (Bkrtcy.E.D.Pa.

1988) (holding that mortgage contract did not come within "door-to-door sales" provision

of UTPCPL where sole connection to debtor's home was that appraisal occurred there);

*Lewis v. Delta Funding Corp. (In re Lewis)*, 290 B.R. 541, 553 (Bkrtcy.E.D.Pa. 2003)

(holding that single contact, which debtor initiated by telephoning mortgage broker from

her home, was insufficient to bring brokerage contract within door-to-door sales

provision of Pennsylvania UDAP).

In this case the record establishes material contacts upon the Debtor at his

home. The Debtor testified that "a fellow, [phonetic] Ken Venick contacted [him] and told

him that if I don't put my home up, my mother is going to be out on the street of her

property [sic]." Transcript of Hearing, Sept. 17, 2014 (T- 7). While the Debtor did not

testify that he was contacted at home, his counsel alleged in the rescission demand that

such contact did in fact occur at the home. *See* Stip. ¶ 17, Ex. O. Moreover, the loan

closing took place at the Debtor's home. The Debtor and his wife both testified to that

fact. T-5; T-10. Accordingly, the Court finds that the transaction was a "door-to-door"

sale for present purposes.

*Right to Rescind*

The Door to Door Sales Law provides that at the time the contract is signed, the

seller is required to do two things: first, the seller must provide the buyer with written

notice that the buyer may rescind the contract within a certain period of time (73 P.S. §

201-7(b)); and second, "[e]ach buyer shall be informed at the time he signs the contract

or purchases the goods or services, of his right to cancel." (73 P.S. § 201-7(d)). The

Debtor maintains that he did not receive the *written notice* nor was he *informed* by the

seller *of his right to rescind* the contract as required by Pennsylvania law.

*Notice of Right*
*To Rescind*

Some clarification regarding the Debtor's position is in order. The Debtor is not

arguing that he did not get *any* notice of a right to rescind. To the contrary, the Debtor

has stipulated that he received the Notice of Right to Cancel attached as Exhibit E to

the Stipulation of Facts. However, that notice, he maintains, satisfies only the

requirement under the federal Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* It does not

satisfy, he contends, his right to a separate written <u>and</u> oral notice under the Door to

Door Sales Law.

*TILA Disclosure*
*As Sufficient Notice*

Fannie Mae disputes that a second written notice was required. It relies for this proposition upon the following subsection of the Door to Door Sales law: "A 'Notice of Cancellation' which contains the form and content required by rule or regulation of the Federal Trade Commission shall be deemed to be in compliance with the requirements of this section." 73 P.S. § 201-7(m). Fannie Mae maintains that the TILA Notice which the Debtor received when the loan was made satisfies the state law's requirement that the buyer be notified of his right to rescind the loan. Fannie Mae's Post-Trial Brief, 5-6.

The Debtor maintains that Fannie Mae misreads the applicable law. Subsection (m) specifically states that a notice of cancellation "contain[ing] the form and content of a rule or regulation *required by the Federal Trade Commission*" will suffice for purposes of rescission notice under the Pennsylvania law. However, says the Debtor, the Notice of Right to Cancel under TILA was not required by a rule or regulation of the FTC; rather it was required by a rule or regulation of the Federal Reserve Board. *See Ford Motor Credit Co. v. Milholland*, 444 U.S. 555, 559-560, 100 S.Ct. 790, 794 (1980) (explaining that the Federal Reserve Board promulgates rules and regulations under TILA) It is argued that the federal notice which the lender gave the Debtor (again, the TILA notice), cannot satisfy the notice requirement under the state Door to Door sales law. Moreover, argues the Debtor, transactions such as the Debtor's loan are excluded from the FTC regulations regarding door to door sales. *See* Debtor's Brief, 2 citing 16 C.F.R. § 429.0(a)(6). ("The term door-to-door sales does not include a transaction … [p]ertaining to the sale or rental of real property.") In sum, the Debtor contends that neither the TILA notice, nor the type of transaction involved here, qualifies the lender for an exclusion

11

from the notice requirement under the Door to Door sales law. See Debtor's Brief and

Post-Trial Brief.

After analysis, the Court agrees, in part, with the Debtor. The FTC door to door

regulation is inapplicable to this loan, but not because the loan was for the purchase of

real estate.  In fact, the mortgage loan in this case was not for the purchase of real

estate, but was instead made to refinance an existing indebtedness.  There is another

exclusion from the door to door regulation which applies to this transaction:  loans which

are already subject to the TILA disclosure requirement because they are secured by the

borrower's residence. The FTC regulation provides, in pertinent part:

> Door-to-Door Sale--A sale, lease, or rental of consumer
> goods or services with a purchase price of $25 or more,
> whether under single or multiple contracts, in which the
> seller or his representative personally solicits the sale,
> including those in response to or following an invitation by
> the buyer, and the buyer's agreement or offer to purchase is
> made at a place other than the place of business of the
> seller (e.g., sales at the buyer's residence or at facilities
> rented on a temporary or short-term basis, such as hotel or
> motel rooms, convention centers, fairgrounds and
> restaurants, or sales at the buyer's workplace or in dormitory
> lounges*). The term door-to-door sale does not include a
> transaction:*
> …
> (2) *In which the consumer is accorded the right of rescission
> by the provisions of the Consumer Credit Protection Act (15
> U.S.C. 1635) or regulations issued pursuant thereto;*

16 C.F.R. § 429.0(a)(2) (emphasis added). Section 1635 of Title 15 is part of TILA and

provides that

> Except as otherwise provided in this section, *in the case of
> any consumer credit transaction* (including opening or
> increasing the credit limit for an open end credit plan) *in
> which a security interest, including any such interest arising
> by operation of law, is or will be retained or acquired in any
> property which is used as the principal dwelling of the person*

> *to whom credit is extended*, the obligor shall have the right to
> rescind the transaction until midnight of the third business
> day following the consummation of the transaction or the
> delivery of the information and rescission forms required
> under this section together with a statement containing the
> material disclosures required under this subchapter,
> whichever is later, by notifying the creditor, in accordance
> with regulations of the Bureau, of his intention to do so. The
> creditor shall clearly and conspicuously disclose, in
> accordance with regulations of the Bureau, to any obligor in
> a transaction subject to this section the rights of the obligor
> under this section.

15 U.S.C. § 1635(a). The corresponding Federal Reserve Board regulation (Regulation

Z) provides: "In a credit transaction in which a security interest is or will be retained or

acquired in a consumer's principal dwelling, each consumer whose ownership interest is

or will be subject to the security interest shall have the right to rescind the transaction…"

12 C.F.R. § 226.23.

In the instant transaction, the Debtor obtained consumer credit which was

secured by a mortgage on his home. The federal Truth in Lending law required the

lender to notify him that he had the right to rescind the loan (i.e., that he be given the

TILA notice). That notification was not given pursuant to a federal regulation regarding

unfair or deceptive business practices (an FTC regulation). Rather it was given pursuant

to federal consumer lending law. Because the notice was not given pursuant to the FTC

regulation, any consideration of the exclusion set forth in subsection (m) of the

Pennsylvania Door to Door Sales Law is inapposite.

*Preemption and
The TILA Notice*

This finding, however, does not mean that the notice that was given fails to

otherwise satisfy the Door to Door notice requirement. The Debtor, of course, insists

that it does not. He maintains that the TILA Notice does not satisfy the Door to Door

Sales Law's notice requirement because the two notices are not the same. Debtor's

Post-Trial Brief, 3-4. Fannie Mae disputes this premise maintaining that the two notices

inform the borrower of the same rights. Fannie Mae's Post-Trial Brief, 5-6. Given that

the question involves two notices whose purposes inform of the same right, the Court

had expected the issue of preemption to have been raised. It was not, but it is clearly

implicated.

Typically, a conflict between state and federal law "arises when compliance with

both federal and state regulations is a physical impossibility or when state law stands as

an obstacle to the accomplishment and execution of the full purposes and objectives of

Congress." *Hillsborough Cnty. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 713, 105

S.Ct. 2371, 2375, 85 L.Ed.2d 714 (1985). TILA provides for a specific section which

addresses preemption. Section 1610 provides that the statute does "not annul, alter, or

affect the laws of any State relating to the disclosure of information in connection with

credit transactions *except to the extent that those laws are inconsistent with the*

*provisions of this subchapter and then only to the extent of the inconsistency."* 15

U.S.C. § 1610(a)(1) (emphasis added). Regulation Z provides that a state law is

preempted to the extent that it is inconsistent with TILA. 12 C.F.R. § 226.28(a). Further,

it adds that a law is inconsistent "if it requires a creditor to make disclosures or take

actions that contradict the requirements of the Federal law." *Id.* The Court turns to this

question.

<u>TILA Notice</u>

The TILA cancellation notice the Debtor received reads as follows:

# NOTICE OF RIGHT TO CANCEL

LENDER MAS Associates, LLC,
      d/b/a Equity Mortgage Lending, LLC      DATE April 25, 1997
      601 Baltimore Pike, Media PA 19063      LOAN NO. 0026
                                          TYPE CONV FIX Refinance

BORROWERS/OWNERS Stephen Deitch, Joyce Deitch

Address: 10908 Lockart Road
City/State/Zip Philadelphia, Pennsylvania 19116

PROPERTY 10908 Lockart Road
            Philadelphia, Pennsylvania 19116

You are entering into a transaction that will result in a mortgage/lien/security interest on/in your home. You have a legal right under federal law to cancel this transaction, without cost, within three business days from whichever of the following events occurs last:

      (1) the date of the transaction which is 04/25/2007; or
      (2) the date you received your Truth-In-Lending disclosures; or
      (3) the date you received this notice of your right to cancel.

      If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on/in your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

      You may keep any money or property we have given you until we have done the things mentioned above, but must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 calendar days of your offer, you may keep it without further obligation.

---

**HOW TO CANCEL**

If you decide to cancel this transaction, you may do so by notifying us in writing at:
MAS Associates, LLC, d/b/a Equity Mortgage Lending, LLC 601 Baltimore Pike, Media PA 19063

---

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than midnight of April 28, 2007 (or MIDNIGHT of the THIRD BUSINESS DAY following the later of the three events listed above.) If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

**I WISH TO CANCEL**

_____                    _____
SIGNATURE                                                              DATE

The undersigned each acknowledge receipt of two copies of <u>NOTICE OF RIGHT TO CANCEL</u> and one copy of the Federal Truth in Lending Disclosure Statement.

Each of the borrowers/owners in this transaction has the right to cancel. The exercise of this right by one borrower/owners shall be effective as to all borrowers/owners:

[signed and dated in original]                          [signed and dated in original]
_____                    _____
BORROWER/OWNER                                          DATE
Stephen Deitch                                                     Joyce Deitch

*See* Stip., ¶ 8, Ex. E, Notice of Right to Cancel.

<u>State Law Cancellation Notice</u>

The notice required under the Door to Door Sales Law must meet these

requirements:

(b) At the time of the sale or contract the buyer shall be provided with:

(1) A fully completed receipt or copy of any contract pertaining to such sale, which is in the same language (Spanish, English, etc.) as that principally used in the oral sales presentation, and also in English, and which shows the date of the transaction and contains the name and address of the seller, and in immediate proximity to the space reserved in the contract for the signature of the buyer or on the front page of the receipt if a contract is not used and in bold face type of a minimum size of ten points, a statement in substantially the following form:

"You, the buyer, may cancel this transaction at any time prior to midnight of the third business day after the date of this transaction. See the attached notice of cancellation form for an explanation of this right."

(2) A completed form in duplicate, captioned "Notice of Cancellation," which shall be attached to the contract or receipt and easily detachable, and which shall contain in ten-point bold face type the following information and statements in the same language (Spanish, English, etc.) as that used in the contract:

Notice of Cancellation

(Enter Date of Transaction)

You may cancel this transaction, without any penalty or obligation, within three business days from the above date.

If you cancel, any property traded in, any payments made by you under the contract or sale, and any negotiable instrument executed by you will be returned within ten business days following receipt by the seller of your cancellation notice, and any security interest arising out of the transaction will be cancelled.

17

If you cancel, you must make available to the seller at your residence in substantially as good condition as when received, any goods delivered to you under this contract or sale; or you may, if you wish, comply with the instructions of the seller regarding the return shipment of the goods at the seller's expense and risk.

If you do make the goods available to the seller and the seller does not pick them up within twenty days of the date of your notice of cancellation, you may retain or dispose of the goods without any further obligation. If you fail to make the goods available to the seller, or if you agree to return the goods to the seller and fail to do so, then you remain liable for performance of all obligations under the contract.

To cancel this transaction, mail or deliver a signed and dated copy of this cancellation notice or any other written notice, or send a telegram, to (name of seller), at (address of seller's place of business) not later than midnight of (date).

I hereby cancel this transaction.

...................................
(Date)
...................................
Buyer's Signature

(c) Before furnishing copies of the "Notice of Cancellation" to the buyer, both copies shall be completed by entering the name of the seller, the address of the seller's place of business, the date of the transaction, and the date, not earlier than the third business day following the date of the transaction, by which the buyer may give notice of cancellation.

73 P.S. § 201-7(b), (c).

A side-by-side comparison of the federal form (which the Debtor received) and the Door-to-Door Law notice (which the Debtor maintains he should have also received), reveals the two forms to be highly similar. To begin with, the names of the documents are the same. The UDAP form is entitled "Notice of Cancellation": the TILA form is entitled "Notice of Right to Cancel." The time within which cancellation must

occur is the same under both forms: 3 days. As to when the seller must recover his

property, both forms require the seller to do so within 20 days or the borrower is entitled

to keep the money or property. Both forms require the notice to state a specific deadline

after which the right to rescind expires. Finally, subsection (c) states that for purposes of

consummating rescission, the notices must bear the name of the seller, its place of

business, the date of the transaction, and the specific deadline for exercising the

rescission right. The TILA notice does all of these four things. To this extent the two

notices inform of the same rights which may be exercised in the same manner.

As to the return of the consideration, however, there is a significant difference:

under TILA the borrower's money is to be returned within 20 days of rescission; under

the Door to Door Sales Law notice the return must be made within 10 days. The two

forms are in conflict on a point that affects what would presumably be among a

rescinding borrower's primary concerns: i.e., how soon they are entitled to get their

money back. Under TILA the borrower is entitled to "clear and conspicuous" notice of

what its rights are. Section 1632 of TILA provides that "information required by this

subchapter shall be disclosed *clearly and conspicuously* in accordance with the

regulations of the Board." 15 U.S.C. §1632(a) (emphasis added). Regulation Z requires

the lender to "make the disclosures required by this subpart clearly and conspicuously

in writing, in a form that the consumer may keep." 12 C.F.R. §226.17(a)). The giving of

two notices which contain contradictory information regarding the same important right

does not promote clarity, it creates confusion. *See Williams v. Empire Funding Corp.*,

109 F.Supp.2d 352, 358 (E.D.Pa. 2000). Irrespective, as the state law expressly

mandates a disclosure and/or action which clearly contradicts the same disclosure

and/or action required by federal law, the Court finds the written notice requirement of

the Door to Door Sales Law to be preempted by the TILA notice.

*Oral Notice*

The Court turns next to the question of whether the Debtor was otherwise

"informed" of the right to rescind as well. The Debtor interprets the term "informed" to

require "oral" notice. Debtor's Post-Trial Brief, 3 citing *Fowler v. Rauso, et al. (In re*

*Fowler)*, 425 B.R. 157, 187 n. 42 (Bkrtcy.E.D.Pa. 2010). Fannie Mae disagrees with

this, and maintains that the written Notice of Right to Cancel which the Debtor received

at the loan closing suffices for purposes of "informing" the Debtor of that right. Fannie

Mae's Post-Trial Brief, 6.

The Court agrees with Fannie Mae. Contrary to what the Debtor maintains,

"inform" in this context does not mean to be told "orally." The legislative history to

subsection (d) indicates that when the Door to Door Sales Law was amended in 1976,

the word "orally" appeared before the word "informed" in the first 3 iterations of the bill.

*See* H.B. No. 485, Sess. of 1975, Printer's No. 537, 1857, and 1979 (Pa. 1975). In the

fourth iteration, however, the word "orally" was specifically stricken from the bill. *Id.*,

Printer's No. 2032. That is how the language in the bill remained when it passed. *See*

P.L. 1166, Act No. 260 B.B. 485. The relevant floor action reveals that the word "orally"

was stricken from the amendment "to prevent litigation over whether someone was

informed or not." *See* 1975 Pennsylvania Legislative Journal—House, 2169-2170

(Remarks of Rep. Hutchinson).

Notwithstanding, one commentator has suggested that such a reading renders

subsection (d) of the state law superfluous. *See* Ackelsberg, *Pennsylvania Consumer*

*Law*, § 2.6.3, 137-138 (Bissel, 2003 & 2009 Supp.) (asserting that regardless of the

legislative history, the subsection must be interpreted to require an oral statement of

right to cancel since otherwise it would be entirely redundant). The Court disagrees.

Subsection (b) states that "at the time of the sale or contract the buyer shall be provided

with the [notice of cancellation]." 73 P.S. § 201-7(b). It specifies a variety of pertinent

time frames to be referenced in the notice. Subsection (d) is silent on these points.

Furnishing the written notice required in subsection (b),  however, fulfills the

requirement in subsection (d) that a basic right of cancellation notice be given. The two

subsections are complementary not cumulative. The Court finds the provisions of the

statute to be in harmony and that the language of the statute can be reasonably read to

give effect to all of its provisions.[5] This conclusion, of course, is buttressed by the fact

that the legislature specifically excised the requirement of an oral notice. The Court

accordingly rejects the Debtor's position that separate "oral" notice is required. [6]

*Assignee Liability*

        In its post-trial brief, FNMA belatedly raised a threshold but equally dispositive

issue. Even assuming that notice was not given as required by state law, FNMA argues

that it is immune from liability because it is an assignee of the Debtor's mortgage loan

and not the original lender. The Debtor disagrees and maintains that FNMA is not

insulated as the assignee of the mortgage. Debtor's Post-Trial Reply Brief, 2.

        The Debtor relies on a line of cases which hold that an assignee's rights and

position under a contract are no greater than those of the assignor. Debtor's Post-Trial

---

[5] *See American Textile Mfrs. Inst., Inc. v. Donovan*, 452 U.S.490, 513, 101 S.Ct. 2478, 2492 (1981) ("all
parts of a statute, if possible, are to be given effect"); *Pokorny v. Ford Motor Company*, 902 F.2d 1116,
1120 (3d Cir. 1990) (same)
[6] The Court underscores that any contrary holding would lead once again to an obvious preemption issue.

Reply Brief, 2. The majority of the cases on which the Debtor relies, however, involve contract claims; none of them involve consumer liability statutes. *See, e.g., Cardionet, Inc. v. CIGNA Health Corp*., 751 F.3d 165, 178 (3d Cir. 2014) (stating basic principle of assignee rights and liabilities under contract law); *Horbal v. Moxham National Bank*, 548 Pa. 394, 697 A.2d 577, 583 (1977) (same); and *Kepler v. Kepler*, 330 Pa. 441, 199 A. 198, 203 (1938) (observing that a purchaser of mortgage takes subject to all equities). In the only case cited that did involve consumer protection, *In re Fowler*, 425 B.R. 197 (Bkrtcy.E.D.Pa. 2010), the Court specifically found that the buyers of the mortgage were on notice that something was amiss with the transaction and for that reason refused to accord them bona fide purchaser status. 425 B.R. at 203. None of these decisions are helpful to the Debtor.

What a long line of authorities demonstrates instead is that the reach of the UTPCPL is not limitless. *See Williams v. Nat'l Sch. of Health Tech., Inc.*, 836 F.Supp. 273, 283 (E.D.Pa.1993) (both noting that the UTPCPL does not impose liability on parties who have not themselves committed wrongdoing.); *Roche v. Sparkle City Realty*, No. 08–2518, 2009 WL 1674417, at *4 (E.D.Pa. June 12, 2009) ("[N]umerous courts have found that loan assignees cannot be held liable under the UTPCPL without allegations that they specifically committed wrongdoing."); *see also McMaster v. CIT Group/Consumer Finance, Inc.*, 2006 WL 1314379, at *8 (E.D.Pa. 2006) (finding that assignee could not be liable under UTPCPL where facts not alleged that original lender was acting on behalf of assignee when violation occurred); *Colanzi v. Countrywide Home Loans, Inc.*, 2008 WL 483446, at *2 (E.D.Pa. Feb. 22, 2008) (observing that "[o]ther courts in this district have found that assignees of loans, who have not been

alleged to have committed any wrongdoing, cannot be liable under the UTPCPL")

Because it has not been alleged, let alone proven, that Fannie Mae itself committed any

violation of the UTPCPL, it cannot be liable under the statute.

*Summary*

The Debtor received the requisite notice of his right to rescind the subject loan.

Further, in connection with this transaction FNMA is entitled to the protection accorded

to a good faith assignee. The Objection to FNMA's proof of claim is therefore denied.

An appropriate Order follows.[7]

By the Court:

_____
Stephen Raslavich
United States Bankruptcy Judge

Dated: <u>December 3, 2014</u>

---

[7] In closing, the Court notes with dismay the invitation made by Debtor's counsel in the October 8, 2014 Brief filed by him on the Debtor's behalf. Therein counsel writes that, if the Court considers the consequences of the non-bankruptcy law applicable here to be too severe for FNMA, a "nudge" calculated to encourage FNMA to accept a settlement offer from the Debtor "would be in order." Counsel suggests that the Court accomplish this by issuing an opinion which informs FNMA that the Court is "probably" going to rule against it, and then giving the parties some time to negotiate. (Brief at unnumbered page 5 of 6). The impropriety of the foregoing is quite troubling. Needless to say the Court declines counsel's inappropriate request of it and will not "nudge" either party. The Court does, however, admonish counsel for requesting an advisory opinion, and for making a request that arguably would require the Court to violate the Code of Conduct for United States Judges, 175 F.R.D. 363 (1998) , Canons 2A and 3A(4)